UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENDON AMERICA INSURANCE COMPANY | CIVIL ACTION NO. 06-2357 |
| versus | JUDGE WALTER |
| B&S EQUIPMENT COMPANY, INC. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Clarendon America Insurance Company ("Clarendon") issued a commercial general liability policy to B&S Equipment Co., Inc. ("B&S"). A dispute has arisen as to whether Clarendon owes coverage in connection with a personal injury suit. Clarendon invoked the diversity jurisdiction of this court and filed a complaint for declaratory judgment against B&S. Before the court is a Motion to Dismiss (Docs. 6 & 7) filed by B&S that asks the court to exercise its discretion to decline to entertain the request for a declaratory judgment. B&S requests, in the alternative, a transfer of venue.

### Declaratory Actions and Discretion

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in a case of actual controversy within its jurisdiction (subject to certain exceptions), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act confers discretion on the courts rather than an absolute right on a litigant. Wilton v. Seven Falls Co., 115 S.Ct. 2137, 2143

(1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."

The court has discretion whether to decide or dismiss a declaratory action, but that discretion is not unfettered. The Fifth Circuit, in St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir.1994), identified seven nonexclusive factors for a district court to consider in exercising its discretion. These factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

Those factors will be assessed after a review of the relevant facts that can be gleaned from the record supplied by the parties.

**Relevant Facts**

William Weathersby filed suit in a state court in Iberia Parish for personal injuries he suffered in a work accident. Weathersby alleged that he, while employed by B&S, was assisting in the unloading of barges at a dock operated by Excalibar Minerals of La., L.L.C. ("Excalibar"). As a vessel pushed a loaded barge towards the dock, a rope attached to another barge at the dock suddenly snapped and struck Mr. Weathersby. The petition filed by Mr. Weathersby names as defendants Excalibar and Carlin Fleet, Inc. ("Carlin"), the owner of the vessel. Doc. 6, Exhibit A.

Excalibar made demand upon B&S that B&S indemnify it and provide a defense to the Weathersby suit. The demand was based on a service agreement that allegedly existed between the two companies. Excalibar contends that the agreement obligates B&S to indemnify Excalibar from such claims and to have in place liability insurance coverage that names Excalibar as an insured. Excalibar reviewed B&S's Clarendon policy and did not see that Excalibar was a named insured, so it made demand upon B&S for indemnification pursuant to the service agreement. Doc. 1, ¶ 9.

Attorneys for B&S exchanged correspondence with a Clarendon claims manager. B&S took the position that a provision of the policy afforded it coverage for Excalibar's indemnification demands. Doc. 7, Exhibit B. B&S's letter of December 7, 2006 demanded that Clarendon immediately defend and indemnify B&S from the claims asserted by Excalibar.

On December 19, 2006, less than two weeks after B&S sent the demand just discussed, Clarendon filed this federal action against B&S seeking a declaratory judgment. Clarendon's complaint describes the Weathersby suit and the demand by B&S. Clarendon then takes the position that the policy provides no coverage for Excalibar or B&S with respect to the losses alleged in the Weathersby suit. Clarendon alleges that Excalibar is not a named insured and that B&S's claim is subject to various exclusions and barred by B&S's failure to timely notify Clarendon of the claim.

On January 3, 2007, approximately two weeks after this federal suit was filed, B&S filed suit in a Jefferson Parish state court against Clarendon *and* the agency that placed the policy. (The agency is, like B&S, a Louisiana citizen, which would appear to prevent a diversity-based removal of that action.) B&S alleged that Clarendon had wrongfully denied coverage and was liable for penalties and attorneys' fees under provisions of the Louisiana Insurance Code. B&S also asserted that if it was determined that the Clarendon policy did not provide coverage, the agency that sold the policy should be liable to B&S for failing to procure the coverage requested by B&S.

**Analysis of the Trejo Factors**

The first Trejo factor is whether there is a pending state action in which all of the matters in controversy may be fully litigated. The Weathersby suit does not provide a vehicle to litigate the issues presented by Clarendon in this case. Neither Clarendon nor B&S is a party to that suit.

The other candidate is the suit that B&S filed in state court against Clarendon (after Clarendon filed this federal action). The petition in that state-court case alleges that the Clarendon policy "specifically provided coverage to Excalibar as an additional named insured" and that Clarendon wrongfully denied Excalibar's demand for coverage and defense. B&S asserts that Clarendon is liable to B&S based on the denial of coverage to Excalibar. The petition does not clearly articulate the basis upon which Clarendon is liable to B&S for those events, but B&S does allege that because of Clarendon's denial of coverage to Excalibar, B&S will continue to incur damages and fees associated with the Weathersby suit pending against Excalibar.

Clarendon's complaint in this declaratory judgment action seeks a declaration that there is no coverage under the policy for any of the damages at issue. It seeks that declaration based on arguments that Excalibar is not a named insured, that exclusions bar coverage, and that B&S failed to timely notify Clarendon of the claims.

The claims in the two suits are presented in different terms and seek different forms of relief, but both suits will require the resolution of whether the Clarendon policy provides coverage to Excalibar or otherwise renders Clarendon liable to B&S in connection with the Weathersby claim against Excalibar. The exclusions and notice defenses on which Clarendon seeks a declaration in this federal suit are readily available to it as defenses in the Jefferson Parish suit filed by B&S. The Jefferson Parish suit also includes B&S's claim against the agency, and that claim is not present in this federal action. It appears, therefore,

that the pending Jefferson Parish action is one in which all of the matters in controversy could be fully litigated. Each of the exclusions or arguments that Clarendon wishes to make may not be pleaded on the face of the petition in that action, but it is not reasonable to expect B&S to plead defenses and exclusions in its petition. Clarendon will be able to raise those issues as defenses and litigate them fully in that state court action. Clarendon may also assert, by reconventional demand, any policy-related issues that it believes are not within the scope of the B&S petition.

This federal declaratory judgment action raises only issues of state law, and there is a state case that may be used to litigate the same state law issues. In that situation, "generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." Sherwin-Williams v. Holmes County, 343 F.3d 383, 390-91 (5th Cir. 2003).

The next Trejo factors are whether Clarendon filed this suit in anticipation of a lawsuit filed by B&S or engaged in improper forum shopping. The filing of every lawsuit requires selection of a forum, and federal declaratory judgment suits are almost always filed in anticipation of other litigation (or there would be little need to seek a declaration of rights). Thus, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" Sherwin-Williams, 343 F.3d at 391. And when an out-of-state plaintiff like Clarendon invokes diversity jurisdiction, it is in keeping with the

traditional justification for diversity jurisdiction, which is to protect such foreign defendants. Id. at 399.

The same state law will apply to the issues presented by Clarendon whether the issues are resolved in a state court or this court, so there is no suggestion that Clarendon brought its action in federal court in search of more favorable law. There is also no suggestion that Clarendon is engaged in a "race to res judicata" with B&S. Thus, there is no basis for a finding that Clarendon filed suit in any wrongful anticipation of a state suit or that it engaged in forum shopping. See Sherwin-Williams, 343 F.3d at 399-400.

The next Trejo factors ask whether possible inequities arise in allowing Clarendon to gain precedence in time or to change forums, and whether the federal court is a convenient forum for the parties and witnesses. B&S urges that Shreveport is inconvenient for all parties and witnesses except Clarendon because the case bears no nexus to Shreveport except that Clarendon administered the policy via an agent with an office in Shreveport. That may be true, but B&S has not identified any witnesses who would have to travel an unreasonable distance nor has B&S otherwise articulated a factual basis for a burden imposed on it by this forum. If this court denies the motion to dismiss, the merits of this case will likely be resolved one way or the other by summary judgment. Counsel for Clarendon is located in Shreveport, and counsel for B&S is located in Metairie, but this case should require few, if any, court appearances. Furthermore, when addressing a similar "convenience of parties and witnesses" issue in the context of a venue dispute, the Fifth Circuit held that the convenience

of counsel is not a factor. In re: Volkswagen AG 371 F.3d 201, 206 (5th Cir. 2004). Accordingly, the convenience factors do not suggest that dismissal is in order.

The final factor is whether retaining this suit would serve the purposes of judicial economy. There appears to be the potential for the Jefferson Parish suit filed by B&S to resolve all of the issues Clarendon presents in this case, but that potential alone is certainly not enough to warrant dismissal. Otherwise, the federal declaratory action defendant could always react to the federal suit by filing a parallel state court suit (that includes a non-diverse defendant to prevent removal) and obtain dismissal of the first-filed federal action. It cannot be determined on this record whether B&S's Jefferson Parish filing was inspired by such a strategy, but some circumstantial evidence of that is present.

A related consideration is the ability of the parties to obtain a speedy resolution of the merits of their dispute. State courts, especially in a metropolitan area such as Jefferson Parish, traditionally have a heavy docket that do not resolve cases swiftly. The efficiencies of Judge Walter's docket, on the other hand, will almost certainly result in a resolution of the case within several months. When that federal judgment becomes final, its res judicata effect will save the Jefferson Parish court the need to address the issues within the scope of that judgment.

There is a pending state court case that appears capable of resolving the issues presented in this case. That is ordinarily a factor that weighs heavily in favor of dismissal but in this case there are other factors that favor maintaining the federal case. There is no basis to find that Clarendon has engaged in any improper forum manipulation, but there is

circumstantial evidence that B&S attempted to gerrymander the dismissal of this action by swiftly filing a state court case that also named a non-diverse defendant. The convenience factors do not favor dismissal, and the judicial economy factor is neutral or perhaps favors maintaining the federal case. After considering all of the relevant factors, the undersigned recommends that it is the best exercise of this court's discretion to deny the motion to dismiss and proceed toward a resolution of this case on the merits.

**Transfer of Venue**

B&S makes an alternative request to transfer venue to the Eastern District of Louisiana. Whether to transfer venue under §1404(a) is committed to the sound discretion of the district court. Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988). B&S, as the defendant, bears the burden of proving that transfer is appropriate. Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989). Unless the defendant shows the balance of factors strongly favors transfer, the plaintiff's choice of forum generally should not be disturbed. Gulf Oil Corp. v. Gilbert, 67 S.Ct. 839 (1947). And the court should not transfer a case "where the only practical effect is the shifting of inconvenience from the non-moving party to the moving party." Salem Radio Representatives, Inc. v. Can Tel Market Support Group, 114 F.Supp.2d 553, 558 (N.D. Tex. 2000).

B&S states that it is domiciled in Jefferson Parish (in the Eastern District of Louisiana) and that it purchased the policy from an agent that does business in that parish. B&S adds that the only nexus between this dispute and Shreveport is that Clarendon's agent

in Louisiana who administers the policy works from an office in Shreveport. Those facts do not strongly favor transfer, so Clarendon's choice of this forum should not be disturbed.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Abstain and Dismiss or, In The Alternative, Transfer Venue (Doc. 7)** be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 2nd day of May, 2007.

                                                MARK L. HORNSBY
                                      UNITED STATES MAGISTRATE JUDGE